IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONNOR SPORT COURT INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SNAP COURT, LLC, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO COMPEL PRODUCTION OF THE CONTENTS OF SPORT COURT'S USB THUMB DRIVE** <br><br> Case No: 2:05 CV 328 TS <br> District Judge Ted Stewart <br><br> Magistrate Judge David Nuffer |

Plaintiff Sport Court has moved to compel[1] Defendant Jeremy Shapiro to produce a USB thumb drive he used while employed by Sport Court and thereafter while employed by Defendant Snap Court, a competitor of Sport Court.



Typical Thumb Drive

A thumb drive is a computer data storage device, roughly the size of a thumb, capable of holding large amounts of information. The device in question holds 1 gigabyte of data, equivalent to 64,000 to 670,000 pages of information, depending on the nature of the data.[2] The PNY VIBE thumb drive at issue is also a music player and FM radio. Thumb drives may also be referred to as "flash drives" because they use so-called "flash"



PNY VIBE 1 GB MP3

*photos are illustrative*

---

[1]Motion to Compel Production of Contents of Sport Court's USB Thumb Drive, docket no. 53, filed October 3, 2005.

[2]LexisNexis Applied Discovery, *How Many Pages in a Gigabyte*, www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf, last visited November 12, 2005.

memory which operates at high speeds, does not need power to store data and offers fast access to data.[3]  A thumb drive is a highly portable, readily usable and relatively inconspicuous way to move data.

## Factual Background

Shapiro was employed by Sport Court from December 1996 to January 2005.[4]  On November 12, 2004, he purchased the thumb drive from COMPUSA for $169.99 and applied for reimbursement to Sport Court.[5]  Shapiro claims he was given the thumb drive by a Sport Court employee, Gaylen Whitely,[6] but Sport Court claims Whitely was not authorized to take that action.[7]

Shapiro met with Snap Court representatives on December 16, 2004, and submitted his resignation from Sport Court on December 21, 2004.[8]  He ended his Sport Court employment January 10, 2005[9] and received an offer of employment from Snap Court on January 17, 2005.[10]

---

[3]Flash Memory, http://en.wikipedia.org/wiki/Flash_memory, last visited November 12, 2005.

[4]Declaration of Jeremiah Shapiro Regarding Rule 56(f) Motion and Motion to Compel Contents of Thumb Drive (Shapiro Declaration) ¶ 2, attached as Exhibit 2 to Response in Opposition to Motion to Compel Production of the Contents of Sport Court's USB Thumb Drive (Opposition Memorandum), docket no. 63, filed October 21, 2005.

[5]Exhibit A to Memorandum in Support of Motion to Compel Production of the Contents of Sport Court's USB Thumb Drive (Supporting Memorandum), docket no. 58, filed October 3, 2005.

[6]Shapiro Declaration ¶ 3; Opposition Memorandum at 2.

[7]Letter, August 29, 2005, Kevin P. Ferguson to Mary Anne Q. Wood, attached as Exhibit E to Supporting Memorandum.

[8]Declaration of Jeremiah Shapiro (Shapiro SJ Declaration) ¶ 7 attached as Exhibit 1 to Memorandum in Support of Defendant Shapiro's Motion for Partial Summary Judgment, docket no. 49, filed August 31, 2005.

[9]Shapiro SJ Declaration ¶ 8.

[10]Shapiro SJ Declaration ¶ 8.

Shapiro admits that at some time *before* he left Sport Court the thumb drive contained Sport Court data,[11] but claims that when he left Sport Court, the thumb drive "contained only digital music files" and "did **not** contain any Sport Court files or information."[12] He also says that after he left Sport Court, he used the device in his employment with Snap Lock, storing "three files (drawings) that [he] had created for Snap Lock . . . ."[13]

On May 10, 2005, Sport Court notified Shapiro that he was "in possession, custody and/or control of electronic data containing information relevant to Sport Court's claims" that may be located on company and personal thumb drives and reminded Shapiro of his duty to preserve all such relevant data.[14] On June 10, 2005, Sport Court served Shapiro with written discovery which would have required production of the thumb drive.[15] In response a month later on July 12, 2005, Shapiro stated the thumb drive would "be produced to a mutually acceptable third-party expert at a time convenient to the parties and counsel."[16] As of that date, Shapiro says the thumb drive "contained only digital music files" and the three files he had created for Snap Lock.[17]

---

[11] Shapiro Declaration ¶ 8.

[12] *Id.* ¶ 4 (emphasis in original).

[13] *Id.* ¶¶ 5 and 7. *See also* letter, September 23, 2005, Mary Anne Q. Wood, to Kevin P. Ferguson, attached as Exhibit J to Supporting Memorandum.

[14] Supporting Memorandum at 2 (quoting Ferguson letter to Wood and Wing, attached to the Supporting Memorandum as Exhibit B).

[15] Shapiro Declaration ¶ 3.

[16] *Id.* ¶ 4 (quoting Response No. 5 in Responses to Sport Court's First Requests for Production To Jeremiah Shapiro, attached to the Supporting Memorandum as Exhibit D).

[17] Shapiro Declaration ¶ 7.

Somewhere between July 12 and September 12, 2005, "a 'mirror-image'[18] of the flash drive was created by an independent computer expert."[19] On September 12, 2005, the thumb drive was delivered to Sport Court.[20] The accompanying letter from Shapiro's counsel stated that "the contents of the thumb drive have been removed by a third-party expert and preserved in other electronic format."[21]

> Sport Court claims that
>
> Shapiro's actions in "remov[ing]" the contents of the thumb drive appear to have destroyed, removed, or encrypted files, drivers and/or other information necessary for the normal operation of the thumb drive.  The thumb drive is no longer recognized by a computer's operating system upon insertion into the USB slot of the computer, nor can the thumb drive be located or accessed by the computer.[22]

On September 20th, Sport Court alerted Shapiro to the damaged condition of the thumb drive and demanded Shapiro "produce the entire contents of the thumb drive" and "identify[] the 'third-party expert' that 'removed' the contents of the drive and documenting all activities taken in conjunction with the 'remov[al]' that left the thumb drive inoperable.[23]

---

[18]"A mirror in computing is a direct copy of a data set."  http://en.wikipedia.org/wiki/Mirror_%28computing%29 last visited November 12, 2005.

[19]Shapiro Declaration ¶ 9.

[20]*Id.*.

[21]Letter, September 12, 2005, from Mary Anne Q. Wood, to Kevin P. Ferguson, attached as Exhibit H to Supporting Memorandum.  Shapiro expands on the validity of this process in the Opposition Memorandum at 7.

[22]Supporting Memorandum at 4.

[23]*Id.* (quoting letter, September 20, 2005, Kevin P. Ferguson to Mary Anne Q. Wood, attached as Exhibit I to Supporting Memorandum.

On September 23, 2005, Shapiro's counsel provided an *index* of the mirror image to Sport Court, showing only music files and three other data files.[24] Shapiro has not provided the mirror image to Sport Court.

### Discussion

The thumb drive and its contents were arguably Sport Court property when in Shapiro's possession. Sport Court is entitled to know the contents at the time Shapiro left Sport Court. The contents of the thumb drive at any point in time are uncertain. Shapiro has unilaterally changed the contents of the thumb drive. While he asserts that he has retained a mirror image, the process his expert used has impaired the function of the thumb drive, casting doubt on the efficacy of the expert's processes. The facts are reminiscent of another case in which an expert attempting to preserve data lost some data on a computer and impaired the rest.[25]

A party has a common law duty to preserve evidence. "A litigant has a duty to preserve evidence that he knows or should know is relevant to imminent or ongoing litigation."[26] Shapiro knew the thumb drive was of interest, that Sport Court claimed ownership, that while he worked for Sport Court the thumb drive contained data owned by Sport Court, and that he had also used the drive for Snap Court data, showing that the drive was still used for business purposes after he

---

[24] Shapiro Declaration ¶ 10 (referring to Exhibit A to the Shapiro Declaration, a barely legible print of directories of the thumb drive).

[25] *Gates Rubber v. Bando Chemical Industries,* 167 F.R.D. 90 (D. Colo. 1996). When allowed direct access to the respondent's computer system for the purposes of discovery, the requesting party's computer discovery "expert" destroyed 7-8% of discoverable records and compromised the evidentiary integrity of the rest by failing to properly perform an image backup.

[26] *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, No. 97-5089, 1998 WL 68879, *5 (10th Cir. Feb. 20, 1998) (unpublished decision).

-5-

left Sport Court.  It is clear that Shapiro has taken action that changed the thumb drive, possibly impairing its usability, but clearly altering its status as evidence.  It is no longer possible to examine the thumb drive as it left Sport Court, or even as it was used thereafter.  The best that can be done is to make the mirror image available, with a history of the actions of Shapiro's expert with respect to the thumb drive.

Shapiro (and Snap Court) claim that the three drawing files on the thumb drive mirror are "proprietary business information" and not discoverable.[27]  However, the files are now relevant to the issue of the status of the thumb drive.  They can be adequately protected by the Protective Order entered in this case.[28]

Similarly, Shapiro claims that the identity of the expert who prepared the image and erased the thumb drive is protected under Fed R. Civ P. 26(b)(4)(B).[29]  However, the manipulation of evidence during case progress is an exceptional circumstance justifying disclosure of some information regarding this consulting expert.

This order cannot and does not adjudicate the nature of the evidence, if any, which was affected by Shapiro's expert, nor the effect of the expert's actions on this litigation.  The order only determines that Sport Court is entitled to more information regarding the thumb drive, as a first step to placing it in the position it would have been if the thumb drive had not been manipulated.

---

[27] Snap Court's Motion for Joinder in Memorandum in Opposition to Motion to Compel Production of the Contents of Sport Court's USB Thumb Drive at 1-2, docket no. 65, filed October 21, 2005.

[28] Docket no. 72, filed November 3, 2005.

[29] Opposition Memorandum at 8-9.

## ORDER

IT IS HEREBY ORDERED that Sport Court's motion to compel production of the contents of the thumb drive[30] is GRANTED as provided herein and Snap Court's motion to join in Shapiro's opposition[31] is GRANTED.

IT IS FURTHER ORDERED that on or before November 23, 2005, Shapiro shall deliver to Sport Court as Confidential - Attorneys' Eyes Only under the Protective Order.:

    a.    Legible directories of the thumb drive mirror;

    b.    A copy of the thumb drive mirror;

    c.    The name, address and telephone number of the computer expert who created the mirror image of the thumb drive and removed its contents and a description of the expert's prior or other relationships with any defendant;

    d.    The expert's written description of the procedures followed in creating the mirror image and index and in deleting information from the thumb drive; and

    e.    The expert's recommendations, if any, for restoring data and/or functionality to the thumb drive.

Dated this 14th day of November, 2005.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[30] Docket no. 53, filed October 3, 2005.

[31] Docket no. 65, filed October 21, 2005.